IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. GUL M. CHUGHTAI,

                    Plaintiff,

       v.

BARACK OBAMA, et al.,

                    Defendants.

CIVIL ACTION
NO. 15-0352

OPINION

Slomsky, J.                                                    December 23, 2015

## I.     INTRODUCTION

This case concerns the alleged mistreatment of a former Captain of the United States Air Force.  In January 1988, Dr. Gul M. Chughtai ("Plaintiff") was honorably discharged from the Air Force. (Doc. No. 8, Ex. R.)  After his discharge, Plaintiff repeatedly petitioned the Air Force Board for the Correction of Military Records (the "AFBCMR") to void his discharge and amend his records.  The AFBCMR denied these requests.  (Id., Ex. A.)

On January 20, 2015, Plaintiff filed the instant action pro se, seeking compensatory relief, correction of his military records, and other injunctive relief for alleged tort and constitutional violations.  (Doc. No. 1.)  He filed an Amended Complaint on March 11, 2015.  (Doc. No. 8.) The Amended Complaint names eleven Defendants: President Barack Obama; Secretary of the Air Force Deborah Lee James; Martin Valles; Alexander Daley; Ronald Walker; Richard Niemtzow; John Burr; David Hunter; Kenneth Vanek, "Chairman AF Board of Correction of Military Records;" and "Chief, Material Licensing Branch, Div of Fuel Cycle and material

1

Safety."[1]   (Id.)   On May 1, 2015, Defendant Hunter filed a Motion to Dismiss Plaintiff's Amended Complaint.[2]   (Doc. No. 10.)   On May 27, 2015, Defendants Obama, James, Valles, Daley, Walker, Niemtzow, Burr, Hunter, and Vanek (collectively, the "Federal Defendants"),[3] filed a Motion to Dismiss.  (Doc. No. 15.)   For reasons that follow, the Court will grant both Motions to Dismiss.

## II.   BACKGROUND

The following facts are pertinent to Defendants' Motions to Dismiss and, as alleged in the Amended Complaint and in Plaintiff's filings, are viewed in the light most favorable to Plaintiff.[4]

Dr. Gul M. Chughtai ("Plaintiff") lives in Pennsylvania and is over seventy years old. (Doc. No. 8 ¶ 3.)  Around 1980,[5] Plaintiff was selected to serve as a Captain in the United States Air Force.  (Id. ¶ 3, Ex. B.)  In or about 1983, Plaintiff served as Chief of Medical Physics at the

---

[1]   As discussed in greater detail below, the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679 (2010), requires that the United States be substituted as the lone defendant in Counts I, II, III, and V.  Therefore, the United States will also be considered a Defendant in this case even though it was not named as one in the Amended Complaint.

[2]   This Motion to Dismiss was filed by Defendant Hunter before the United States Attorney's Office entered its appearance on behalf of all Defendants in their official capacities.  (Doc. No. 10; Doc. No. 11; Doc. No. 30 at 3.)

[3]   The Federal Defendants and the United States of America are represented by the United States Attorney's Office.  (Doc. No. 15 at 1.)

[4]   The Court will consider all facts alleged in the Amended Complaint and Plaintiff's Oppositions to Defendants' Motions to Dismiss the Amended Complaint.  Because Plaintiff is a pro se litigant, he is entitled to deference in his filings and is held "to less stringent standards than formal pleadings by lawyers."  United States v. Bradley, 505 F. App'x 220, 221 n.1 (3d Cir. 2012) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

[5]   Though the factual account in the Amended Complaint is detailed, few dates are provided.  As such, some dates are estimates based on exhibits attached to the Amended Complaint. Additionally, Plaintiff uses acronyms.  The Responses of Defendants give the full description of the acronyms.

Malcolm Grow Medical Center ("MGMC") on Andrews Air Force Base in Maryland.  (Id. ¶ 4, Ex. C.)   While serving as Chief of Medical Physics, Plaintiff became aware that two other doctors were treating cancer patients using nuclear radiation without proper medical licenses.[6] (Id. ¶ 7.a.)  Plaintiff instructed the doctors to stop but they refused to do so.  He then reported the violations to the United States Nuclear Regulatory Commission.  (Id. ¶ 8.)  Defendant Niemtzo also treated cancer patients with an experimental drug not approved by the Federal Drug Administration, and these patients "died silently."  (Id. ¶¶ 9, 11.)

Following the filing of an Incident Report based on Plaintiff's observations, Defendant Walker, Chief of Nuclear Medicine at MGMC, and Defendant Vanek, Physicist at Willford Hall Medical Center, "ganged up" on Plaintiff and "became revengeful."  (Id. ¶ 10.)  After he filed the Incident Report, Plaintiff also received negative Officer Evaluation Reports ("OERs").[7] According to Plaintiff, Defendant Daley destroyed the records of a Radiation Safety Committee meeting at which Plaintiff complained of ongoing violations.  (Id. ¶ 17.)  Defendant Daley also transferred Plaintiff to the Biological Engineering section of the MGMC and changed Plaintiff's title to "Computer Coor [sic] Radiotherapy."  (Id. ¶¶ 18, 20.)  Furthermore, Defendant Daley appointed Defendant Niemtzo, the doctor Plaintiff had previously reported, as Plaintiff's supervisor.  (Id. ¶ 20.)

Plaintiff was thereafter transferred to "OEHL, Brooks AFB, TX, directly under [Defendant Burr] who was hostile to [Plaintiff]."  (Id. ¶ 21.)   He continued to receive poor

---

[6]  One of these doctors, Dr. Richard C. Niemtzo, is a named Defendant.  The other, Major Vinode Sachdeva, is not named.

[7]  Prior to reporting Defendant Niemtzo, Plaintiff received "outstanding" reports.  After reporting him, Plaintiff received poor evaluations from Defendant Colonel Alexander F. Daley.  (Doc. No. 8 at ¶ 16.)

Officer Evaluation Reports, which he alleges were intended to prevent him from being promoted.[8]  (Id. ¶ 22.)  Defendant Hunter then became Plaintiff's supervisor and "was directed by John Burr and Ken Vanek to mistreat [Plaintiff] and not to cooperate or assign any project." (Id. ¶ 23.)

In 1988, Plaintiff was honorably discharged from the Air Force.  (Id. ¶ 23; Doc. No. 15-2 at 2.)  Plaintiff submitted eight appeals to President Obama between March 2009 and November 2014.  He received no response.  (Id. ¶ 26.)  Additionally, Plaintiff submitted three appeals to then-Secretary of the Air Force Michael W. Wynne between May 2008 and March 2009, to which he received no response.[9]  (Id. ¶ 27.)

Major General Thomas P. Ball, who Plaintiff alleges "actively took part to destroy [his] professional career and . . . became part of the crime and tried to conceal the crime of licensing violations," wrote a recommendation letter for Plaintiff after Plaintiff was "exonerated."[10]

---

[8]   Plaintiff cites to one negative OER written by Defendant Burr and Defendant Hunter on November 20, 1987, and another written by Defendant Burr and Defendant Hunter on December 15, 1987.  (Id. ¶¶ 24-25.)

[9]   Plaintiff states, "Defendant Secretary USAF, Michal W. Wayne [sic] was then the Secretary of USAF who was sent several appeals. . . . No Response was ever received."  (Id. ¶ 27.)  Mr. Wynne is not named as a defendant in the caption of the Amended Complaint.  Therefore, the Court will not consider him a defendant.  Additionally, the Amended Complaint does not specify the reasons for Plaintiff's appeals to President Obama and Mr. Wynne.  Based on a 2014 Letter from Colonel Matthew Yetishefsky, discussed below, the Court assumes that the appeals to President Obama and Mr. Wynne were requests for correction of Plaintiff's military records.  (See id., Ex. A.)

[10]   It is not clear from the Amended Complaint or other filings how Plaintiff was "exonerated." The letter of Major Ball is attached to the Amended Complaint, but it is illegible.  The Court presumes that the referenced "exoneration" is the AFBCMR's voiding and removal of one OER.  (Id., Ex. Q.)

However, according to Plaintiff, "it was too late as the damage was already done."[11]  (Id. ¶ 28.) Plaintiff alleges that Defendant Vanek has called Plaintiff's recent employers and "bad mouth[ed]" him.  (Id. ¶ 34.)

Based on a 2014 letter from Colonel Matthew Yetishefsky, United States Air Force Chief, Congressional Inquiry and Travel Division (the "2014 Letter"), it is evident that Plaintiff repeatedly petitioned the Air Force Board for the Correction of Military Records (the "AFBCMR") for correction of his records.  (Id. Ex. A.)  In 1991, the AFBCMR issued a final determination on Plaintiff's request for correction of his records, denying all requests except for the voiding and removal of one OER.  (Id. Ex. A, Ex. Q.)  Plaintiff filed requests for reconsideration with the AFBCMR once in 1993, three times in 2008, once in 2009, and twice in 2011.  Each time, the AFBCMR staff reviewed his requests and, "after a careful consideration of his requests, it was determined his requests did not meet the criteria for reconsideration."  (Id. Ex. A.)  The 2014 Letter stated:

> Absent judicial action, the Air Force considers Dr. Chughtai's AFBCMR decision final.  Any future correspondence from him on this issue will be filed without action.  However, pursuant to 5 U.S.C. Section 701, et. Seq. and 28 U.S.C. Section 1491, Congress authorizes applicants to pursue final AFBCMR decisions through he [sic] U.S. Court of Claims or appropriate U.S. District Court.  Those Federal Courts have the authority to set aside AFBCMR decisions if they find them to be arbitrary or capricious.

(Id.)

As noted above, on March 11, 2015, Plaintiff filed the Amended Complaint.  (Doc. No. 8.)  He named the eleven Defendants identified previously.  (Id.)  In the Amended Complaint, Plaintiff alleges claims in five Counts:  Counts I, II, III, and V are intentional tort claims.  Count

---

[11] Plaintiff refers to Major Ball as a defendant.  However, Major Ball is not named in the caption of the Amended Complaint.  Therefore, the Court will not consider him a defendant in this case.

IV appears to allege employment discrimination under Title VII of the Civil Rights Act of 1964, as well as violations of his constitutional rights.[12]

In Count I, Plaintiff alleges "mental agony" against Defendants Daley, Vanek, Walker, and Burr.  (Id. ¶¶ 35-39.)  Based on the allegations made here, the Court interprets this claim as one of intentional infliction of emotional distress.  Count II alleges assault.  Plaintiff asserts that Defendants Daley, Walker, Vanek, Burr, and Hunter assaulted Plaintiff by yelling at him.  (Id. ¶¶ 40-41.)  In Count III, Plaintiff alleges tortious interference with contracts by "Defendants at MGMC."  The only Defendant he specifically mentions in this Count is Defendant Vanek.  (Id. ¶¶ 42-44.)  The final tort claim is set forth in Count V.  Claims of defamation and slander are alleged in this Count.  (Id. ¶¶ 47-50.)  Plaintiff asserts that Defendants Vanek, Walker, Daley, Burr, and Hunter "made maliciously false statements, calling Press, bad mouthing about my educational qualification, experience and training . . ."  (Id. ¶ 48.)

Count IV is a claim of "violation of [Plaintiff's] human rights."   Plaintiff asserts that he is a "victim of retaliation, racial discrimination, harassment and intimidation" by Defendants Daley, Walker, Vanek, Burr, and Hunter.  He states that the five Defendants "engaged in blatant act [sic] of terrorism to harass me due to my religious creed, color and national origin."  (Id. ¶ 46.)  These Defendants allegedly forced Plaintiff to leave the Air Force by "destroying [his] OERs and making false and malicious statements."  (Id.)

---

[12] Title VII provides in pertinent part:  "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

In Count IV, Plaintiff also alleges violations of his "constitutional and human rights."  He does not, however, specify which constitutional rights were violated.  (Doc. No. 8 ¶ 46; Doc. No. 10 at 17.)

Plaintiff requests that the Court grant him the following relief:  (1) render Plaintiff's negative Officer Evaluation Reports void; (2) set aside Plaintiff's "non selection to the grade of Major"; (3) correct Plaintiff's records to show that he was selected for promotion in 1986; (4) promote Plaintiff to a higher rank; (5) declare Plaintiff's 1988 discharge from the Air Force void and retroactively restore him to "active duty Commissioned status with higher rank"; (6) reimburse the cost of this action; (7) award general damages; (8) award punitive damages; and (9) afford Plaintiff any "further relief as may be deemed appropriate and/or necessary to accord him full and complete relief."  (Doc. No. 8 at 10-11.)

As noted, Motions to Dismiss are pending.  On July 16, 2015, the Court held a hearing on the Motions to Dismiss.  (Doc. No. 25.)  On July 27, 2015, Plaintiff filed a "Memorandum of Additional Evidences [sic]".  (Doc. No. 27.)  The Federal Defendants filed a Response in Opposition to the Memorandum on July 30, 2015, and Defendant Hunter filed a Response in Opposition to the Memorandum on August 10, 2015.  (Doc. Nos. 28, 29.)   For reasons that follow, the Court will grant both Motions to Dismiss.[13]

## III.   STANDARD OF REVIEW

Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6). "When a motion to dismiss is based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b) defenses, the Court should

---

[13] For purposes of this Opinion, the Court has considered the following: the Amended Complaint (Doc. No. 8); the Motion to Dismiss of Defendant David Hunter (Doc. No. 10); the Motion to Dismiss of the Federal Defendants (Doc. No. 15); the Response in Opposition to Defendant Hunter's Motion to Dismiss (Doc. No. 17), the Response in Opposition to the Motion to Dismiss of the Federal Defendants (Doc. No. 18); the Reply of Defendant Hunter (Doc. No. 20); the "Memorandum of Additional Evidences [sic]" of Plaintiff (Doc. No. 27); the Response in Opposition of the Federal Defendants (Doc. No. 28); the Response in Opposition of Defendant Hunter (Doc. No. 29); and the arguments of Plaintiff and defense counsel made at the hearing held on the Motions on July 15, 2015 (Doc. No. 30).

consider the Rule 12(b)(1) challenge first because, if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses become moot and need not be addressed."  Wyeth and Cordis Corp. v. Abbot Labs., No. 8-230, 2008 WL 203685, at *2 (D.N.J. May 8, 2008); see also Tagayun v. Stolzenberg, 239 F. App'x. 708, 710 (3d Cir. 2007) ("An actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case."); McCurdy v. Esmonde, 2003 WL 223412, at *4 (E.D. Pa. Jan. 30, 2003) ("Without jurisdiction the court cannot proceed at all in any cause.") (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)).

> Federal Rule of Civil Procedure 12(b)(1) states:
>
> (b) How to Present Defenses.
>
> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> (1) lack of subject-matter jurisdiction . . .

Fed. R. Civ. P. 12(b)(1).  "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be either facial or factual."  Smith v. Rebstock, Civ. No. 10-01515, 2011 WL 1235142, at *1 (E.D. Pa. 2011) (citing Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009)). Facial attacks—like the one presented in this case—challenge the sufficiency of the pleadings, and the court must accept the complaint's allegations as true.[14]  Id.  "Plaintiffs, as the parties invoking the federal courts' jurisdiction, bear the burden of establishing their standing." Common Cause of Pennsylvania, 558 F.3d at 257.

---

[14] Defendants argue for dismissal pursuant to both Rule 12(b)(1) and Rule 12(b)(6).  (Doc. No. 10 at 16; Doc. No. 15-2 at 8-13.)  Additionally, Defendant Hunter argues for dismissal pursuant to Rules 12(b)(2) & (3).  (Doc. No. 10 at 16.)  Because the Court will dismiss this case pursuant to Rule 12(b)(1) for reasons discussed below, it need not consider the arguments for dismissal pursuant to Rules 12(b)(2), (3), & (6).

**IV.    ANALYSIS**

**A.    Counts I, II, III, and V Fail to State Claims against Defendants under Rule 12(b)(1)**

In Count I, Plaintiff alleges "mental agony" against Defendants Daley, Vanek, Walker, and Burr.  (Doc. No. 8 ¶¶ 35-39.)  Plaintiff states:

> Defendants [sic] Alex Daley intends to cause and did cause a harmful contact with Plaintiff by yelling, shouting and locking my office disgracefully, transferred me to Bio engineering Department, changing my professional title and down grading my OER **and criminally destroying all the record of Radiation safety Minutes of meeting**. . . . As a direct and proximate result of all defendants, Plaintiff suffered extreme mental anguish and physical pain.  These injuries have caused Plaintiff to suffer general damages in an amount to be determined by proof at trial by a jury. . . . Defendants at MGMC acts were done knowly, [sic] willfully and with malicious intent, and Plaintiff is entitled to punitive damages in an amount determined by proof at trial before a jury.

(Id. (emphasis in original).)  Because "mental agony" is not a state or federal claim for relief, the Court will construe Count I as a state law claim of intentional infliction of emotional distress.  Count II alleges assault.  Plaintiff asserts that Defendants Daley, Walker, Vanek, Burr, and Hunter—"jointly as a gang of five"—assaulted Plaintiff by shouting and yelling at Plaintiff and "almost making threats."  (Id. ¶¶ 40-41.)  Plaintiff avers that this behavior has caused him psychological and mental damage.  (Id.)

In Count III, Plaintiff alleges tortious interference with contracts by "Defendants at MGMC."  (Id. ¶¶ 42-44.)  Count V sets forth claims of defamation and slander.  (Id. ¶¶ 47-50.)  Plaintiff specifically alleges that Defendants Vanek, Walker, Daley, Burr, and Hunter "made maliciously false statements, calling Press, bad mouthing about my educational qualification, experience and training . . ."  (Id. ¶ 48.)

As noted, Counts I, II, III, and V are all state law tort claims.  The Court will first analyze these Counts as to President Obama, and then as to the remaining Defendants.

           **1.**        **The President of the United States Is Entitled to Absolute Immunity**

Counts I, II, III, and V must be dismissed against President Obama because he has absolute immunity from suit.  It is well settled that the President of the United States is entitled to absolute immunity from suits for civil damages based on official acts.  See Forrester v. White, 484 U.S. 219, 225 (1988); Nixon v. Fitzgerald, 457 U.S. 731, 749-755 (1982).  Furthermore, Plaintiff's sole reference to President Obama appears in the fact section of his Amended Complaint, and concerns the President's failure to respond to Plaintiff's appeals.[15]  Because President Obama is cloaked with absolute immunity from suit, he will be dismissed as a defendant.

           **2.**        **The Federal Defendants Are Immune from Suit under the Westfall Act, and the United States of America Cannot Be Sued under the Feres Doctrine**

The Federal Defendants have set forth several reasons for dismissal of Counts I, II, III, and V.  (Doc. No. 15.)  Initially, they argue that the United States must be substituted as the lone defendant in Counts I, II, III, and V pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679 (2010) (the "Westfall Act").  (Doc. No. 15-2 at 6.) The Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties."  Osborn v. Haley, 549 U.S. 225, 229 (2007); 28 U.S.C. § 2679(b)(1).  Upon presentation of certification by the Attorney General—or a United States Attorney serving on her behalf—that a federal employee sued for a common law tort was acting within the scope of his employment, "the employee is dismissed

---

[15] Plaintiff states: "Defendant Barack Obama is the President of USA and Commander in Chief of US Armed Forces.  After exhausting all other avenues, Plaintiff submitted eight (8) appeals to Hon. President Obama . . . for seeking justice.  Plaintiff never received a single response." (Doc. No. 8 ¶ 26.)

from the action, and the United States is substituted as defendant in place of the employee.  The litigation is thereafter governed by the Federal Tort Claims Act." <u>Id.</u> at 230.[16]

Certification by the United States Attorney General or United States Attorney "is *prima facie* evidence that the employee's challenged conduct occurred within the scope of employment, but it is not conclusive."   <u>Melo v. Hafer</u>, 13 F.3d 736, 742 (3d Cir. 1994) (quoting <u>Schrob v. Catterson</u>, 967 F.2d 929, 936 (3d Cir. 1992)).  "If the matter is disputed, the burden then shifts to the plaintiff, who must come forward with specific facts rebutting the certification." <u>Schrob</u>, 967 F.2d at 935; <u>see also</u> <u>Gutierrez de Martinez v. Lamagno</u>, 515 U.S. 417, 422 (1995) ("Ordinarily, scope-of-employment certifications occasion no contest.").   Therefore, Defendants argue, Plaintiff's intentional tort claims against the United States must proceed under the FTCA.

Here, the United States Attorney for the Eastern District of Pennsylvania certified that Defendants were federal employees within the meaning of the FTCA, and that they were acting within the scope of their federal employment at all relevant times.  (Doc. No. 15, Ex. C.) Plaintiff has not presented any evidence to rebut the certification of the United States Attorney, nor has he called into question its validity.  In his response to the Federal Defendants' Motion to Dismiss, he does not refute the certification.  Therefore, based on the certification by the United States Attorney, the Court will dismiss the individual Federal Defendants with respect to Counts I, II, III, and V, and substitute the United States as the only defendant.

---

[16] The Federal Torts Claims Act ("FTCA") establishes a limited waiver of the federal government's immunity from private suit.  <u>See</u> 28 U.S.C. § 1346(b).  Under the FTCA, the federal government may be sued in a district court for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346.

In arguing that Counts I, II, III, and V must be dismissed against them, the Federal Defendants contend that the Court lacks subject matter jurisdiction over Plaintiff's claims under the <u>Feres</u> Doctrine, and that consideration by this Court of Plaintiff's claims "would inevitably result in impermissible judicial second-guessing of military decision-making." (Doc. No. 15-2 at 9; <u>see also</u> Doc. No. 10 at 26.)  In <u>Feres v. United States</u>, the Supreme Court of the United States held that the government is "not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. 135, 146 (1950).

The <u>Feres</u> Doctrine applies to state law intentional torts.  See <u>John v. Sec'y of Army</u>, 484 F. App'x 661, 663 (3d Cir. 2012) ("the rationale for precluding [FTCA] suits [against the federal government] applies equally to suits brought directly under state law" because "[s]uits founded on state law have the same potential for undermining military discipline as federal tort claims"); <u>Jaffee v. United States</u>, 663 F.2d 1226, 1239 (3d Cir. 1981) (holding that the <u>Feres</u> doctrine extends to bar a federal service member's state law intentional tort claim against Army supervisors).  "*Feres* should be interpreted to "bar *all* suits on behalf of service members against the Government based upon service-related injuries." <u>Loughney v. United States</u>, 839 F.2d 186, 188 (3d Cir. 1988) (quoting <u>United States v. Johnson</u>, 481 U.S. 681 (1987)) (emphasis in original).  The Third Circuit has noted that, "[w]hen a court finds that a suit against the Federal Government is not within the scope of the FTCA due to the *Feres* doctrine, it must necessarily conclude that the United States has not waived sovereign immunity with respect to that suit."

Loughney, 839 F.2d at 188 (concluding that the "proper course" in such a case is Rule 12(b)(1) dismissal).[17]

In his response to Defendants' Motion to Dismiss, Plaintiff claims that "jurisdiction lies in this Court based on the facts that he is a resident of the U.S. District Court for Eastern District of Pennsylvania and was such a resident when he was originally recruited in the Air Force and appointed directly as a Captain with the official title of Chief of Medical Physics and Radiation Safety Officer." (Doc. No. 18 at 2.) No other averment is made in opposition to Defendants' subject matter jurisdiction argument.

Plaintiff bears the burden of proving that this Court has subject matter jurisdiction to hear his claims. He has not set forth any argument as to why his intentional tort claims against the federal government are not barred by the Feres Doctrine. Since the Feres Doctrine bars FTCA suits against the government for injuries to servicemen arising during the course of employment, the claims against the United States of America must be dismissed. Accordingly, the Court will dismiss Counts I, II, III, and V for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[18]

---

[17] The Feres Doctrine bars monetary damages in these instances, but does not necessarily bar injunctive relief. See Jorden v. Nat'l Guard Bureau, 799 F.2d 99, 107-108 (3d Cir. 1986) (noting that the general rule bars a damages action by military personnel against superior officers, but not a claim for injunctive relief); see also Urie v. Roche, 209 F. Supp. 2d 412, 417 (D.N.J. 2002). The Court will discuss Plaintiff's claim for injunctive relief below.

[18] Defendants make several more arguments for dismissal. These arguments are made under Federal Rule of Civil Procedure 12(b)(6). According to Defendants, Plaintiff's claims also fail because Plaintiff failed to exhaust administrative remedies under the FTCA, Plaintiff's claims are barred by the statutes of limitations governing the FTCA and Title VII, and the United States enjoys sovereign immunity from suit. (Doc. No. 10 at 29-38; Doc. No. 15 at 10-12.) Additionally, Defendant Hunter argues that the Court lacks personal jurisdiction over him under Rule 12(b)(2) and that the Eastern District of Pennsylvania is not the proper venue under Rule 12(b)(3). (Doc. No. 10 at 16.) Because the Court lacks subject matter jurisdiction over this case pursuant to Rule 12(b)(1), it will not analyze the accompanying defenses.

**B.      Count IV, "Violation of My Human Rights," Also Fails under Rule 12(b)(1)**

In Count IV, Plaintiff alleges a "violation of [his] human rights."   Plaintiff asserts that he is a "victim of retaliation, racial discrimination, harassment and intimidation" by Defendants Daley, Walker, Vanek, Burr, and Hunter.  According to Plaintiff, the five Defendants "engaged in blatant act [sic] of terrorism to harass me due to my religious creed, color and national origin." (Doc. No. 8 ¶ 46.)  Plaintiff also alleges that the five Defendants forced him to leave the Air Force by "destroying [his] OERs and making false and malicious statements."  (Id.)  Although Plaintiff does not mention Title VII of the Civil Rights Act of 1964, the claim made in Count IV appears to allege discrimination based on race and religion as well as constructive discharge under Title VII.

In addition to alleging a Title VII claim, Plaintiff appears to allege constitutional violations pursuant to 42 U.S.C. § 1983 ("Section 1983").  Plaintiff states, "Certainly it is violation of my constitutional and human rights and they forced me to leave USAF by destroying my OERs and making false and malicious statements."  (Doc. No. 8 ¶ 46.)  He does not, however, specify which of his constitutional rights were violated.

Plaintiff's employment discrimination claim fails under Rule 12(b)(1) because the Feres Doctrine bars claims brought by military personnel under Title VII.  As a preliminary matter, a federal employee asserting a claim of employment discrimination must name as the defendant the head of the appropriate agency.  See 42 U.S.C. § 2000e-16(c) (". . . the head of the department, agency, or unit, as appropriate, shall be the defendant."); Wadhwa v. Sec'y, Dep't of Veterans Affairs, 505 F. App'x 209, 213 (3d Cir. 2012) ("the only proper defendant in a federal employee's Title VII action is the head of the appropriate agency.").  As such, the only proper Defendant with regard to this claim is Defendant James, the Secretary of the Air Force.

Moreover, the <u>Feres</u> Doctrine bars Title VII claims brought by military personnel against their superiors.  See <u>Willis v. Roche</u>, 256 F. App'x. 534, 536 (3d Cir. 2007) (interpreting the <u>Feres</u> Doctrine to bar Title VII claims, reasoning that "every court of appeals considering the issue has held that the <u>Feres</u> doctrine bars uniformed military personnel from bringing discrimination claims under Title VII and other discrimination statutes."); <u>Tucker v. Wynne</u>, No. 08-4390JAP, 2009 WL 2448520, at *4 (D.N.J. Aug. 10, 2009) (holding that air force mechanic was barred by <u>Feres</u> from bringing claims under Title VII, and, accordingly, the court lacked subject matter jurisdiction over his claims under Rule 12(b)(1)); <u>Moore v. Pennsylvania Dep't of Military & Veterans Affairs</u>, 216 F. Supp. 2d 446, 452 (E.D. Pa. 2002) (holding that Title VII provides a remedy for civilian employees of military departments but not members of the armed forces); <u>Urie v. Roche</u>, 209 F. Supp.2d 412, 417 (D.N.J. 2002) (applying the <u>Feres</u> doctrine to prevent Air National Guard technicians from suing their superiors under Title VII).

The <u>Feres</u> Doctrine also bars suits for damages against federal officers for constitutional violations.  See <u>Chappell v. Wallace</u>, 462 U.S. 296, 305 (1983) ("We hold that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations."); <u>John</u>, 484 F. App'x at 663 (finding former Virgin Islands National Guard member's constitutional claims barred by the <u>Feres</u> Doctrine); <u>Jorden</u>, 799 F.2d at 100 (holding damages claims under Section 1983 against state military officers are barred by <u>Feres</u>).

At all times relevant to the Amended Complaint, Plaintiff was a uniformed military employee serving as a Captain in the United States Air Force.  Therefore, his employment discrimination claims are barred by the <u>Feres</u> Doctrine.  Likewise, even if Plaintiff stated a cognizable claim for constitutional violations, that claim would also be barred by the <u>Feres</u>

Doctrine.  Therefore, Count IV must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[19]

### C.    Plaintiff's Claims for Injunctive Relief Are Time-Barred

In addition to money damages, Plaintiff requests the following relief:  (1) render Plaintiff's negative Officer Evaluation Reports void; (2) set aside Plaintiff's "non selection to the grade of Major"; (3) correct Plaintiff's records to show that he was selected for promotion in 1986; (4) promote Plaintiff to a higher rank; (5) declare Plaintiff's 1988 discharge from the Air Force void and retroactively restore him to "active duty Commissioned status with higher rank"; and (6) afford Plaintiff any "further relief as may be deemed appropriate and/or necessary to accord him full and complete relief."  (Doc. No. 8 at 10-11.)

In support of his claims for injunctive relief, Plaintiff relies on the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, and the Tucker Act, 28 U.S.C. § 1491.[20]  (Doc. No. 30 at

---

[19] Because the Court finds that the <u>Feres</u> Doctrine bars any potential Title VII or constitutional claim, it need not rule on whether Plaintiff has pled any plausible claim of constitutional or statutory rights violations.

[20] The Administrative Procedures Act states, in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .

 5 U.S.C. § 706.  The Tucker Act states, in relevant part:

17, 45; Doc. No. 8, Ex. A; Doc. No. 27 at 3.)  The Administrative Procedure Act empowers district courts to set aside an agency action, such as the denial of a request to correct records, if it finds that the action is "arbitrary and capricious."  5 U.S.C. § 706.  Therefore, the Administrative Procedure Act could afford Plaintiff an opportunity to have his poor evaluations voided.

Under the Tucker Act, the United States Claims Court and district courts "share original jurisdiction over non-tort monetary claims against the United States not exceeding $10,000. . . . [and] [o]riginal jurisdiction over such claims seeking more than $10,000 vests exclusively in the Claims Court."  Chabal v. Reagan, 822 F.2d 349, 353 (3d Cir. 1987); see also 28 U.S.C. § 1491. Therefore, the United States waives its sovereign immunity to non-tort claims seeking monetary relief under the Tucker Act, and this could make it liable for backpay and other non-monetary damages sought by Plaintiff.  Chabal, 822 F.2d at 353.

Furthermore, while the Feres Doctrine bars all suits for damages on behalf of service members against the Government based upon service-related injuries, "as a general matter, requests for injunctive relief against the military are reviewable."  Jorden, 799 F.2d at 109. However, under 28 U.S.C. § 2401, civil actions against the United States are barred "unless the complaint is filed within six years after the right of action first accrues."

---

(a) the district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: . . .

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . .

28 U.S.C. § 1346.

The Third Circuit Court of Appeals confronted a limitations issue similar to the one here in Green v. White, 319 F.3d 560 (2003).  In 1981, Green applied to the Board for Correction of Military Records, requesting that his undesirable discharge be upgraded to an honorable discharge.  Id. at 562.  The Board rejected his application.  Id.  In 1999, he presented new evidence to the Board and requested reconsideration of his request.  Id.  The Board again rejected his application, and Green later sought correction of his military records in a lawsuit against the Secretary of the Army in district court.  Id. at 563.  The district court found that the action was time-barred under 28 U.S.C. § 2401, reasoning that the statute of limitations had started to run in 1982 when the Board first rejected his application.  Id.

On appeal to the Third Circuit, the precise issue was whether Green's claim for correction of military records accrued when the Army Board first rejected his application, or when the Board reopened his case and rejected his request for reconsideration on the merits.  Id. The Third Circuit held that the statute of limitations began to run in 1999 when the Board rejected Green's request for reconsideration on the merits because Green had presented new evidence with his request.  Id. at 566.  Therefore, Green filed the district court complaint within the statute of limitations period.  Id.  Significantly, the court also held that "any petition for rehearing to the ABCMR which does not include 'new evidence' or reflect some 'changed circumstances' does not re-start the six-year statute of limitations."  Id.

In the 2014 Letter, which denied repeated requests for reconsideration by Plaintiff, Colonel Yetishefsky noted that the AFBCMR issued a final determination on Plaintiff's request on May 29, 1991.  (Doc. No. 8, Ex. A.)  Though Plaintiff repeatedly applied for reconsideration, there is no indication that new evidence was presented on any of those occasions.  To the contrary, the 2014 Letter attached to Plaintiff's Amended Complaint noted that "no new evidence

or information [had been] provided to justify further inquiry."   (Id.)   Because there was no showing of "new evidence" or "changed circumstances" with regard to Plaintiff's request for injunctive relief, the six-year statute of limitations began to run on May 29, 1991 when the AFBCMR issued its final determination.   Pursuant to 28 U.S.C. § 2401, Plaintiff had until May 29, 1997 to seek review of the decision of the AFBCMR.   Plaintiff filed the instant action on January 20, 2015, over seventeen years after the statute of limitations period had ended.   As such, his claims for injunctive relief will be denied as untimely.

## V.      CONCLUSION

Defendant Hunter's Motion to Dismiss (Doc. No. 10) and Commonwealth Defendants' Motion to Dismiss Federal Defendants' Motion to Dismiss (Doc. No. 15) will be granted.   An appropriate Order follows.